Judge Pryor, Judge Newsom, and I are happy to welcome you to the second day of our sitting here in Atlanta. Hopefully, you're familiar with the lighting system. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, then don't worry about it. You can just keep on going. With that, we'll start with our first case, number 23-12048, James Monroe Dailey v. Fleming. Mr. Birch. May it please the Court. Thomas Birch from the University of Georgia. Today, I have two students who will be helping out with the argument. Casey Smith will handle the opening argument and Sidney McRae the rebuttal, and I'll be at counsel table. Thank you, Your  Okay. Thank you very much and thank you for taking the case, Mr. Birch. We really do appreciate it. Ms. Smith, whenever you're ready. Your Honors, and may it please the Court. My name is Casey Smith, and I, alongside my co-counsel, Sidney McRae, represent the petitioner, Mr. James Dailey. On May 27th, 2021, within five minutes of entering his dorm at Rutledge State Prison, Mr. Dailey was stabbed, beaten, and robbed by two fellow inmates. We ask this Court to reverse and remand the District Court's grant of summary judgment for two reasons. First, because Mr. Dailey faced a substantial risk of harm within Rutledge State Prison, and second, because Deputy Warden of Security Fleming was deliberately indifferent to the substantial risk of harm that Mr. Dailey faced. Can I ask you a quick question? As matters stand before us, do you take the State to be contesting the substantial risk piece? Maybe I can ask them, but it doesn't seem like they've fought too hard over that. They did not respond in their briefing below, and we briefed the issue because the District Court was not clear in whether or not that issue was contested. However, we do believe that there was a substantial risk of harm present that was created by Murdoch and Ellis based on the four prior attacks that were present in the record. Deputy Warden Fleming overseeing the Administrative Segregation Unit and serving as the Deputy Warden of Security should have been, should have responded in a reasonable manner to the substantial risk of harm that was posed by these four prior attacks. And further, he did not deny knowledge of these four prior attacks, and this is critical because as Deputy Warden of Security, he has a duty overseeing the Administrative Segregation Unit and Rutledge State Prison as a whole. When you say he didn't deny knowledge, are you kind of flipping the burden to him? I mean, like you are the plaintiff here. Isn't it your burden to show that he had the knowledge instead of his burden to show that he didn't? It is, Your Honor. However, looking to paragraph 25 of his affidavit, he specifically states that he was unaware of the substantial risk of harm that Murdoch and Ellis posed to Mr. Daley specifically, but that's not the standard that is set forth under Farmer v. Brennan that the United States Supreme Court set forward. A prison official cannot escape liability simply by stating that he was unaware that a specific attack would occur as to a specific party. And further, by his failure to acknowledge the four prior attacks coupled with his general notification of similar security incidents or issues, those two issues together create a genuine issue of material fact that is appropriate for a jury and not a judge. And specifically, within his responses to the interrogatories, he stated he was generally notified of serious security issues such as this one. And under this court's precedent in Rodriguez v. Secretary of Department of, excuse me, the Rodriguez case, he should be generally notified, and that does create a genuine dispute of material fact as to whether or not he was notified of an issue such as this one. Do you think Rodriguez, though, is a little bit different? As I read the footnote in Rodriguez, it seems like there's a little bit less what I'll call leeway there. You know, here he says generally would have been notified of serious security issues. You've got two kind of qualifier words in there that leave a little bit of space. And in Rodriguez, at least with respect to one of the defendants, he said, Johnson said, or we said that Johnson concedes that if an inmate request form addressed a security concern, a prison employee would have forwarded it to me. Right? That seems, there's no leeway there, right? There's not like, yeah, generally would have happened if it were serious. It's like if the form was, you know, sort of if the form was filed, I would have seen it. So is Rodriguez a little different, do you think? It's not, Your Honor, because specifically, Deputy Warden Fleming on page four of his interrogatory stated that he would have been notified of an incident of this nature. He does not dispute that this is the kind of reporting that he generally would have received. And in fact, our case is narrower than Rodriguez, because specifically in Rodriguez, there the defendant stated that he did not receive any kind of notification. However, here we do not have the express denial of notification of the four prior attacks, meaning that the genuine dispute of material fact that was created in Rodriguez is thereby narrower in our case, and the general notification and lack of express denial thereby creates the genuine dispute of material fact. You also have inferences that can be drawn and should be drawn in your favor, reasonable ones, at summary judgment. And I mean, to me, his declaration plus what he would have normally received in that position may get you there. Your Honor, the inferences that were drawn at the district court failed to take into account his lack of acknowledgment of the four prior attacks, as well as his job description. And that, coupled with his duty to prevent harm and his failure to take any reasonable measures to prevent the substantial risk of harm from reaching Mr. Daley, precludes summary judgment. Summary judgment was inappropriate because there were genuine disputes of material fact present in the record below. Was there document discovery in the district court or just interrogatories? Your Honor, Mr. Daley was proceeding pro se at the lower court, and he did not conduct any kind of depositions or he did not have the ability to question Deputy Warden Fleming in any way. And this is critical because all three defendants were represented by the same affidavit, but there's a critical distinction in the questions that were responded to in those affidavits. Two defendants specifically deny knowledge of the prior four attacks, yet Deputy Warden Fleming did not. And that's a critical distinction because he didn't expressly deny knowledge of the four previous attacks that had occurred. And furthermore, Deputy Warden Fleming oversees the Administrative Segregation Unit. This is the same unit that Mr. Daley himself was leaving when he re-entered Dormitory C. And five minutes thereafter, he was stabbed, beaten, and robbed by Murdoch and Ellis. And that in and of itself creates a jury question as to whether or not Deputy Warden Fleming directed Murdoch and Ellis back to Dormitory C following their time in the Administrative Segregation Unit as he did with Mr. Daley. He was also present when Mr. Daley was in the hospital, thereby creating a reasonable inference that he knew where inmates were, specifically as they were leaving the Administrative Segregation Unit, but also knew of the general activities that were going on within the prison, the violent activities that resulted in inmates visiting the hospital following these violent beatings. Specifically, Mr. Daley had a visit from Deputy Warden Fleming following his own attack, and other inmates who had been attacked by Murdoch and Ellis in the past had also visited the hospital, thereby creating a reasonable inference that Deputy Warden Fleming knew that these attacks were going on, and that he failed to take any reasonable steps to prevent them from happening in the future. We don't have the disciplinary reports for Murdoch and Ellis in the record, right? You do, Your Honor. Specifically, Ellis' disciplinary history can be found in— No, no. I know we have the histories. I'm talking about the disciplinary reports for the incidents that they were both involved in. We don't have those, right? I apologize, Your Honor. The specific affidavits state the reports that were made by the inmates themselves who were attacked. That would be Marshall, Sutton, and Lewis. And from there, we can see, coupled with the disciplinary records of Ellis and Murdoch, the pattern of violence that had occurred. No, no. I don't dispute what you're telling me, but once in a while, the disciplinary reports themselves indicate to whom they've been sent and who has reviewed them. As they go up the chain of command, and my clerk and I search for them in the record, we couldn't find the actual disciplinary reports for the incidents involving Ellis and Murdoch. Now, that's understandable because Mr. Bailey was proceeding pro se, but I just want to confirm with you that you don't think that they're in the record, the reports themselves of those incidents. No, Your Honor. We have the affidavits specifically from the four other inmates who were attacked, and when viewed in comparison to the movement history as well as the disciplinary record of Murdoch and Ellis, those in combination affirm the four prior attacks. And specifically, one attack occurred in the Administrative Segregation Unit, where Deputy Warden Fleming is overseeing the inmates, thereby affirming the pattern of violence and the failure of Deputy Warden Fleming to oversee the unit and to ensure that other inmates would not be attacked. We have one attack occurring on April 23rd, then two days later, a second attack, then two days after that, a third, and the third occurring in the Administrative Segregation Unit, where Deputy Warden Fleming is specifically operating, and then a fourth attack three weeks after that. The pattern of violence that was occurring within this unit created a substantial risk of harm that Deputy Warden Fleming had a duty to prevent. The United States Supreme Court in Farmer v. Brennan was specifically concerned about the violent nature of prisons, and such violence cannot go without some form of remedy. And here, Deputy Warden Fleming only needed to act reasonably. A reasonable protection from the serious risk of violence would have been sufficient to prevent him from being held liable. What do you think is your best case for deliberate indifference, your best authority? The best authority, Your Honor, would be Rodriguez, in that a general notification of serious security incidences paired with an express denial creates a circumstantial, creates circumstantial evidence that is appropriate for a jury to draw a reasonable inference that actual knowledge was present. And here, there are similar genuine disputes of material fact as to Deputy Warden Fleming's actual knowledge of the substantial risk of harm. Can I ask you one more Rodriguez question? Another footnote in Rodriguez 15. 15 seems to, like, sort of caveat the incident reports issue. It says something like this, and you can tell me if you think I've got this wrong. Standing alone, the dispute over whether the defendant received the inmate request form probably would not suffice to create a genuine issue of material fact. The form does not contain much about the nature of the anticipated risk, but when the information comes in, there are verbal warnings, now we've got enough. So is Rodriguez really, does it really stand for the proposition that no express denial or some vague acknowledgement that I might have received this kind of form is enough? Rodriguez stands for the proposition that isolated pieces of evidence might not be sufficient to create the circumstantial evidence required to create a jury question. But here, we have satisfied the necessary pieces of evidence that Rodriguez would have required in that he was generally notified of serious security incidences and did not expressly deny knowledge of the four prior attacks. And taking those in concert, there is a genuine dispute of material fact, making summary judgment inappropriate for this case. And therefore, we ask this court to reverse and remand to the district court. Thank you. Thank you very much. Ms. Cusimano. Good morning, and may it please the court. Ellen Cusimano for Deputy Warden Fleming. There's really only one main issue in this case, which is did Deputy Warden Fleming actually consciously know that his own conduct created a substantial risk of harm to Mr. Daley? Okay, just to clear the underbrush, you're walking away from the substantial risk issue. Yes, we're focusing solely on the subjective part of deliberate indifference. Okay. And the burden of showing that is not on Deputy Warden Fleming. It is solely on Mr. Daley. And Mr. Daley has not met that burden here. Really, all he's done is he's provided three affidavits from three inmates who were previously attacked. But there are some serious problems with those affidavits. They're asking us to assume so many different things. And I think the best way I can demonstrate that is to just pick one affidavit and just go through and show all the different things we're having to assume to get to where Mr. Daley wants us to get. So, for example, let's pick the affidavit from Malcolm Marshall. He said in his affidavit that Officer Quigley is the one who sort of came to his rescue after the attack. We have to assume that Mr. Marshall told Officer Quigley what happened. We have to assume that he told him that he was attacked and robbed. We have to assume that he told Officer Quigley that Offender Ellis, Inmate Ellis, is the person who did the attack. We have to then assume that the officer believed this was a serious enough matter to put into writing somehow. You're assuming, I think, that those affidavits are being used for more than just what happened, as opposed to knowledge by Deputy Warden Fleming. I didn't take them that way. I took those inmate affidavits or declarations to establish, at summary judgment, what Ellis and Murdoch had done to them. And then I think Mr. Daley's argument was that all of that, put together with the frequency of the attacks by the two of them in tandem, some of them in administrative segregation, and Deputy Warden Fleming's position in charge of security, where he would have normally gotten these, creates an issue of fact on subjective knowledge. Did I just misread the piecing of circumstantial evidence? I don't think you're completely incorrect there, but we still have to have evidence that Deputy Warden actually knew about these prior attacks. But that evidence doesn't have to be direct, right? Correct. It doesn't have to be direct, but it also can't be speculation. And I think the point I'm trying to get at with these affidavits... If he would have said, to put the biggie off of Judge Newsom's question to Ms. Smith, if he had said, I receive copies of every serious incident report involving an attack on an inmate or an officer in the facility, would he survive summary judgment on subjective knowledge? No, because we still have to get, we still have to have evidence in the record that these incident reports were actually made and that they included the information that he would need to know. And these affidavits... You're suggesting to me that no incident reports were created for these four incidents? They're in the disciplinary history, including convictions for the conduct. There's got to be a record of the incident somewhere, right? But we don't have that in the record. We don't have anything showing that these three inmates actually identified Inmate Ellis as the perpetrator and that we just don't have that evidence. So we're being asked to assume that they reported to the officers that Inmate Ellis was the perpetrator and that the officers then did and went and made some sort of written record. But I would also point out, when it comes to Deputy Warden Fleming's testimony that we're relying on here, what he said is that he didn't say that he receives notifications of every single physical altercation between inmates. What did he say? He said that he only receives notifications of serious security issues. And there's nothing... How many of these four were serious in your view? Well, there are only three affidavits about prior attacks. And one of them, the inmate said that he just received bruising. He didn't go to the hospital. He didn't go to the medical unit. He just received bruising. To me, that is not... But that wasn't serious? Just because he got lucky enough to not get stabbed or shanked? Well, Your Honor, that's my point. We're speculating on what a serious security incident means. He didn't explain that in his declaration either, right? Correct. This came from his interrogatory. He was asked specifically... I'm sorry. You're right. His interrogatory answer. And so his answer there was just, yes, I do receive... And you're right that he doesn't have a burden as a defendant in this case, but he didn't expressly deny knowledge of these incidents, right? That is correct. He didn't, but he doesn't have the burden. Isn't that a little odd? If you're going to write an interrogatory... I know why you wouldn't want to volunteer information, but if you're being asked to provide an interrogatory answer and you never saw these reports, why wouldn't you say so? Well, he wasn't given an interrogatory asking specifically about these three incidents. What was he asked? He was asked specifically, are you notified when there is a serious security issue at Rutledge State Prison? That's all he was asked for that particular interrogatory. I'm not aware of any other interrogatory that was specific to these three prior attacks and his knowledge of the three prior attacks. So that's all we have here is an interrogatory response saying that he's notified of serious security issues, but there's nothing else in the record to explain, number one, what is a security issue? Number two, when does it rise to the level of being serious enough that he would be notified of it? We just don't have that in the record. We also don't have anything in the record from the three inmates indicating that they themselves went to Deputy Warden Fleming and told him about the attack. We instead have to rely on the idea that they told the officers who kind of came to the rescue of all of the details and that those officers then put something in writing. That's just too many assumptions to overcome summary judgment in this case. Let me ask you this. Can you, I think in response to Judge Pryor's very good question, Ms. Smith quite correctly said that her best case is Rodriguez. I kind of nitpicked Rodriguez, but can you respond to Rodriguez? Because I think she's right. It's pretty close. So I disagree. I think, so here's the problem with Rodriguez. In Rodriguez, you had testimony that an inmate submitted a form and that the defendant reviewed those types of forms generally. So you have a direct one-to-one inference. That's only one inference we're being asked to make in that case. Here, we're being asked to make many more inferences. Again, we're being asked to assume that these inmates reported all of the pertinent details to the officers, that the officers then made written reports, and then that the W. Warden Fleming actually read those reports. And not only that, but W. Warden Fleming said that he only, that he's not notified of every type of altercation, but only those that are serious security issues. So to me, that's different from saying that he always reviews a specific form. But aren't there a couple here? I mean, you may be right at the end of the day, but aren't there a couple of the incidents here that regardless of what the inmate reported, the Corrections Department would have logged into a report and processed when they were assessing discipline against Ellis and or Murdoch? I mean, that just stands to reason, right? What did they do to the inmates they attacked? You said one of them just got away with bruising. What happened to the other two? One went to the hospital, one went to the medical unit. Because of what sort of injuries? Because of lacerations to the head. Used by a shank or a knife or some apparatus like that? Yes. You would think that the Georgia Department of Corrections would log that sort of an incident regardless of the report that the inmate made. Maybe the report would have said inconclusive as to who caused the injury, but you would have logged the report. You just can't have an inmate attacked, sent to a hospital, and not document it. Well, I would hope so. Again, that's not in the record, so we don't know that for certain, and that's the problem here. Maybe what this case needs is full-length, full-blown discovery to find out. And then the Department can defend on the ground that it doesn't document these things. I mean, Judge Jordan, the inmate did conduct discovery. Limited discovery. He didn't ask you for documents. He's pro se. That doesn't excuse his burden, and I'm not suggesting that in any way. But a lawyer would have not only deposed Deputy Fleming, something that he didn't have the opportunity to do given his incarcerated status, but he would have asked for documents. He would have said, give me every single incident report involving Ellis and Murdoch, and you would have had to turn them over. I understand. You, the defense, would have turned them over. A lot of inmates are able to request documents. He did not do that here. I understand your point, but he did testify in his deposition that he knew he didn't have evidence of Deputy Warren Fleming's knowledge, and he knew he needed to get that, and he planned to get that during discovery. He then proceeded not to ask any interrogatories relevant to that point. But I want to move on a little bit because even if we just assume for the sake of argument that Deputy Warren Fleming was aware of the prior attacks, he still has to know that his own conduct created a substantial risk of serious harm, and I think that's a problem here for one reason. So the attack here occurred on May 27th, and we know that inmate Ellis and inmate Murdoch on the 20th were placed into administrative segregation for disciplinary purposes. We know that inmate Murdoch was then released three days later. We don't know when exactly inmate Ellis was released, but presumably before the 27th, and yet there's no evidence in the record that Deputy Warren Fleming was aware that these two inmates had been released from disciplinary segregation and placed back into general population. And so I think that's a problem because he's got to know that his own conduct of placing Mr. Daley in Dormitory C, Pod 1, created a substantial risk of harm to him, and we can't connect those dots unless he also knew that inmate Ellis and inmate Murdoch were also in that same dormitory and pod, and we don't have that evidence in the record either. So that's another thing we're being asked to assume. Wasn't he in charge of administrative segregation? He was part of that process sometimes, but that doesn't mean that he was... What does that mean? It's not in the record. Well, what did he say his involvement was? We know that he was involved in the disciplinary hearing for Mr. Daley, and at the end of that hearing, he ordered Mr. Daley into Dormitory C, Pod 1. But I don't think we have any evidence in the record of, for example, that Deputy Warning Flipping is the sole person in charge of releasing inmates from administrative segregation. I just, I don't think that is in the record. And so in short, I think this case really rests on speculation and assumptions, and that's just not sufficient to overcome summary judgment. What is your best case for the lack of subjective knowledge here? I think our best case is Caldwell, just as a contrast case. Because in Caldwell, Caldwell's roommate set his cell on fire when they were locked in the cell. The prison officials knew about the fire. They knew his inmate was violent. When Caldwell was released, he told the prison officials that he was scared to go back into his cell. And so this court found that based on all of those pieces of information that they knew, that the evidence showed they knew, a jury could reasonably infer that they did subjectively know of a substantial risk of harm. And we don't have that same kind of concrete evidence here that would provide the basis for that type of reasonable inference. So unless the court has any additional questions, I'm going to turn it back over to my colleague. All right. Thank you very much. Thank you. Okay, Ms. McRae. Thank you. May it please the court. My name is Sydney McRae, and I also represent Mr. Daley. I'd like to start in response to the government's argument by walking through our pieces of evidence that we have that would show that Ms. Deputy Fleming had knowledge of these prior attacks. First, we have three affidavits from the co-defendants at the trial level, all prepared by the same attorney and submitted with the same motion, two of which the officers denied knowing that Murdoch and Ellis beat and robbed other inmates in Dorm C. But Deputy Fleming only said that he was not aware that Ellis and Murdoch posed a danger to Offender Daley. This is exactly what— But to what extent can you use somebody else's statements as a negative implication as to what Deputy Fleming knew? We think because these affidavits were prepared by the same attorney and submitted with the motion, at least create an inference that Deputy Fleming did know of the prior attacks because of that discrepancy in the language in the affidavits. Courts don't generally look at affidavits that way. They make sure that they're based on personal knowledge and that they're competent. But you don't look at who helped to draft them in terms of how to interpret them. That's not something that courts generally do. It would be a really difficult exercise for line drawing to figure out when you can sort of step behind the veil and try to figure out which affidavit should be given less credence because it was drafted by an attorney representing similarly situated parties. Even still, the statement by Deputy Fleming that he, quote, was not aware that Georgia Department of Correction offenders Ellis and Murdoch posed a danger to Offender Daley, end quote, that specifically is going to what the court warns against in Farmer in that Deputy Fleming may not escape liability only by saying that he did not know that Mr. Daley specifically faced a substantial risk. Instead, all Mr. Daley needs to show is that Deputy Fleming had knowledge of these prior attacks and hence the substantial risk that Ellis and Murdoch posed in general population. I think the trick is, with respect to Judge Jordan's question, is that on the face of it, his Deputy Fleming's affidavit is good for him, not bad for him. At the very least, he denies knowledge of something. So that's like a checkmark on his side of the ledger. You're trying to move the checkmark to the other side of the ledger by virtue of these other two affidavits solely because they were drafted by the same lawyer, right? So, I mean, like there's nothing in Deputy Fleming's affidavit that should be counted against him, right? It's only in juxtaposition to these other two that you think we can draw some negative inference that it now moves to the checkbox from his side of the ledger to your client's. Well, the lack of express denial of knowledge of the prior attacks, coupled with his admission that he is generally notified of serious security issues, we think, as in Rodriguez, this is sufficient to create a jury question that he had knowledge of those prior attacks. So like when I was exploring with Ms. Smith, the footnote 15 in Rodriguez, where we say, look, the sheer fact that he would have been, you know, sort of given these notices alone wouldn't give rise to a genuine issue, but coupled with some other stuff it does. So in your case, the other stuff is this negative implication argument, sort of the comparison of the affidavits, is that right? Well, it's that plus his admission that he is generally notified of serious security issues and the evidence on the record of his job duties as deputy warden of security. There's evidence that he was the one that escorted Mr. Daley to the hospital after the attacks, which might lead to an inference or that could lead to an inference that he also escorted other inmates who were attacked to the hospital and also that he was responsible for transferring inmates in and out of the segregation unit. So all of this evidence in conjunction with each other is enough to create a jury question as to his knowledge. And with that, we ask the court to remand. Thank you. All right. Thank you all very much. Thank you. Take care.